Association on behalf of itself and its members, Global Colon Cancer Association on behalf of itself and its members, Pharmaceutical Research and Manufacturers of America on behalf of itself and its members, v. Xavier Becerra, Secretary, U.S. Department of Health and Human Services. May it please the court, John Elwood for appellants, and I want to thank the court particularly for hearing our case so quickly. The district court clearly erred when it held that NECA's challenge, facial constitutional challenge, to drug pricing provisions codified in subchapter 11 of the Social Security Act was categorically subject to channeling under a provision that provides for channeling for an action to recover on a claim arising under subchapter 18, better known as the Medicare Act. There's no way that anything in that procedural world could give any relief to your client under these circumstances, is there? It has many effects. One of the effects would be that it could affect Medicare reimbursements. That is not the basis for our claim. Our claim is principally a procedural claim, and it has many, many effects outside of Medicare reimbursements. By essentially introducing and coercing transactions, that is requiring mandatory discounts for these upstream transactions, it reduces the average sales price, which is one of the main kind of indicators for pricing in the drug world. It has implications for Medicare reimbursements, certainly, but it also has Medicare reimbursement people can't say, oh, you can't use your monopsony power here to tie and to set prices. They can't do that, can they? I'm not sure if I understand your question. That's not necessarily an unfriendly question, that going through the reimbursement process is not going to give relief to your client from this regime, which they believe is completely unconstitutional and inappropriate. That is correct. Going through an administrative process is not going to give us relief for this injury, and indeed, we are injured regardless of whether we down the road get higher Medicare reimbursement benefits. Because it's participating in the process at all. Because it is, we are injured by the process, the decision-making process, which is constitutionally invalid. It's the same reason that Texas was injured in Texas versus EEOC and the same reason the Continental Airline pilots were injured in Bernoulli or Bertulli versus Continental Airline pilots. In both cases, they were subject to an improper procedure, decision-making under an improper procedure, and the court in both of those instances said, you don't have to wait until you suffer an economic harm. You are injured now. Can you walk us through the standing, to show that it's not speculative, that one of the drugs you provide, your clients provide, will be chosen as part of the drug pricing program? To begin with, I don't think you even have to get to the economic injury. You can just say procedurally, we are injured by this because we are subject to a transaction. NECA is one of the participants in the required sale under Subchapter 11, and so we should be able to have input in how that is done. We should not be subject to, like, an improper delegation, so we're subject to the whims of this big agency, and we shouldn't have the process forced down by excessive fines. And we have, all we need for that is a concrete interest, which we have simply by the fact that we are one of the participants in that transaction, and we're in the same situation as Texas. They didn't have to wait until they tried to hire people. Same situation as the airline pilots. They didn't have to wait until they were disadvantaged by the change in their seniority status. It was enough that the procedure was improper. So we have standing there entirely apart from that. Mr. Elwood, though, if we're particularly, we want to make sure that there is standing under every possible theory of standing. Is there standing under economic injury? Because is it speculative or not that one of the products you provide, your clients provide, will be chosen as drug pricing, as part of the drug pricing program? And does that matter? It is not, Your Honor. It has been selected. Stellara has been selected for reimbursement. It is currently in the process where they're undergoing forced negotiations, sham negotiation process. And unless something happens to kick it out, that will be subject to mandatory pricing as of January 2026. The government says, oh, well, you know, there's biosimilars. But as the government should well know, two things have to happen before biosimilars can kick a drug out of mandatory pricing. First, FDA has to approve it. That has happened. Secondly, it has to be subject to marketing. It has to be marketed. In fact, it has to be subject to bona fide marketing, which is a harder rule that the government adopted without input from my clients. And that, if it happens any later, if that is marketed for the first time on August 2nd of this year, too late. The drug is still going to be subject to mandatory pricing in 26, because there's long lead times built into this. It would have to be a determination by the secretary by August 1st that it's been subject to marketing. And that can't happen, because as we indicated in a footnote in our reply brief, you know, Johnson & Johnson, the maker of Stellara, has been in negotiations with all this. They've been litigating the validity of the patent that's underlying this. And that has been settled and has set forth in the 10-K, and as CMS well knows, the earliest that those biosimilars can market this is January of 2025, which is after August 2nd or August 1st of 2024. So as we said, and as Johnson & Johnson said in the 10-K, there's no reason to believe that it's going to be thrown out of the program. Okay. Just, I want to make sure that this is appropriately an expedited case and make sure that we need to rule quickly. If some things are not happening for a long time, is it, I want to make sure that, I read in the briefs that the program is already influencing investment decisions and the raising of capital. Is that the reason that we need to hurry, and when do we need to make a decision by? What is the reason that we need to hurry, and when do we need to make a decision by? I think that it would be good to have a decision essentially this year, I think, in order to, you know, just because our clients, like Nika's members, are already having trouble raising funds as a consequence of this. And, you know, there are very long lead times built into all of this stuff, and so, you know, I think the main reason we asked for much less expedition than we were given was just to keep this case going, because we'd already sat since, you know, last summer, and we were just finally poured out of court in February. So I think- What do you mean it sat since last summer? It was just, it was in Austin, and Austin is pretty jammed up. I'm sorry. Yeah, yeah, yeah. And so it basically was just, there was no action, it was reassigned through several judges, and they're shorthanded, so it took a while for the court to act. But in any event, this does not arise under subchapter 18. The ordinary formulation is that actions are understood to arise under the law that creates the cause of action, and the law that creates the cause of action is the Constitution and subchapter 11 provisions. You would not have to, no court will ever have to pass on the validity of any provision of subchapter 18. Now this isn't some sort of gotcha thing that, you know, ha ha, they codified it in subchapter 11, they're out of luck, the government's out of luck. There's a reason why they codified it under subchapter 11. Subchapter 18 is about reimbursing transactions, it's about making, you know, paying for beneficiaries to get drugs. This is something that's being regulated, that hasn't been regulated under subchapter 18. It's transactions between private parties upstream of Medicare. And in addition, subchapter 11 is a very different place than subchapter 18. Subchapter 18 is full of mandatory administrative review provisions, and this is one area where I think that this case, our case, differs dramatically from Illinois Council, which is the current high-water mark of mandatory channeling. Because in Illinois Council, there was a, the very inquiry that was at issue there, which is basically disciplinary procedures against nursing homes for violating subchapter 18 regulations, was subject to a specific mandatory administrative review provision. And the court in Illinois Council, it didn't base its channeling decision on the text of the statute. They were very candid about that. They said, if we were just basing it on that provision, an action to recover on a claim under subchapter 13, you know, that most obviously applies to ordinary Medicare benefits claims. They looked to the purpose of the provision, and they said that the purpose of the provision was to protect those mandatory administrative review provisions, to make sure that the secretary had a chance to make, do fact-finding, to apply policies to the implementation of regulations, do things like that. And it said that the purpose of channeling was to protect that. Compare that to subchapter 11. There are not mandatory channeling provisions. In fact, the only time Congress spoke about that was to say, no administrative review, no judicial review for these types of decisions under subchapter 11 mandatory pricing provision. And furthermore, even if it came through, the government admits that they would not rule on, even if we present our facial constitutional challenge to the administrative agency, the agency isn't going to rule on it. Under regulations, they would just kind of push it along to the courts. So again, unlike Illinois Council, where there is serving a real purpose here, we've been through two courts, and we have yet to hear the government explain what earthly good it does for the program for them to present this claim. And you have to take a step back, too, to the agency. You have to take a step back and think about it. Would the Congress that said, do not address an administrative claim to these decisions under this program, would they also say, but by all means, if you're going to challenge the validity of the whole program, you better channel the heck out of that thing? You know, especially the oddity of it is they want us to present our claim that Congress unconstitutionally delegated authority to this agency and present that to the agency, which just doesn't even make sense. Mr. Elwood, if we agreed with you, would we be required to split from the D.C. Circuit's Community Oncology Alliance case? I don't think the court would, because that case is definitely distinguishable. There, they were challenging provisions of the Balanced Budget Act to USC 901 and 906, which established special rules, quote, with respect to the health insurance programs under Title 18 of the Social Security Act, Chapter 18, and directed they be reduced by 2%. And so the very thing that was going on there was to change the calculation directly of Medicare reimbursement. And that's a much easier to say that that is arising under Subchapter 18 when it specifically references Subchapter 18 and affects the Subchapter 18 calculation. That's the whole point of the suit than it is under our case, where it's challenging something that Congress put in a different place altogether. This is much more like the ACCC case, Association of Community Cancer Centers case, where the same three plaintiffs joined by another plaintiff brought suit and successfully held, the court there successfully held that Subchapter 11 provisions aren't subject to mandatory channeling. Are you aware that we would be creating a circuit split with any circuit if we were to rule that this was not a channeling case that needed to go through that process? You would not. This is only, as far as I can tell, this is the third case in all of human history where the DOJ has said you have to channel provisions outside of Subchapter 18. And indeed, if the court affirms in this case, on the contrary, this will be the new high watermark. This will be, the court won't be, the government won't be pointing at Illinois Council anymore. They'll be pointing at this case because not only is it a facial challenge and the government can't point to a single facial challenge outside of Subchapter 11 where they've ever channeled. It's a facial challenge outside of Subchapter 18 and this would be the new high watermark. Again. Do you have any friends of the case law that would be favorable so that you would say we should rely on that case? Well, I think the analysis that I've set forth here, I mean, the best case for us is the ACC case out of the District of Maryland, but again, it's a district court case. I think that the important thing is it's just as a matter of straight textual review. This arises under Subchapter 11 and all the reasons why the bare majority of the Supreme Court 24 years ago said, oh, well, we're going to sweep all sorts of stuff in here. That may make sense under Subchapter 18, although the intervening 24 years have not been really good for using legislative purpose as an independent tool of construction. Can you help me with something? I'm not sure that you can actually, but the district court determined that your client's claim should be dismissed, but then decided to dismiss the claims of all the other parties, too. I think that that was just my bad. Right, but you don't dismiss all the other claims under those circumstances without, why was that the right remedy? That seems very odd. I mean, I guess you hope that you win on behalf of your client, so maybe you can't answer my question, but that seemed odd. I think that the reason why they did that was they said that venue was not otherwise proper in Texas, and you know, the one thing I can say about that versus transferring is that we get an immediate right to appeal, so there's a benefit in that, but in any event, I think that the court should reverse. One other thing that I want to hit on before I sit down is that the government has attempted to downplay the seriousness of this by just saying that this is just a voluntary choice and that, you know, manufacturers, providers, it's just our choice to participate in the Medicare program, and I just want to say a couple words about that. For an abandonment option to render compliance with a government program of voluntary choice, the option would have to be cognizable. That's valid court books versus Garland from the DC Circuit, and for the same reason that the Supreme Court and NFIB versus Sebelius found Obamacare to be coercive, it's coercive here. They're using the same mechanism. They're saying that the only option to not participating in this new program is to get out of Medicare entirely, Medicaid entirely. And it's not just with these products, is it? It's for any product that you sell. It's for any product that is, you can't sell anything through Medicare or Medicaid. What possible pro-competitive justification could there be to tie other products to a penalty? If there were any other, if there were some other private market that had 50% of the market and they tried to tie something to the existing market, you can't do business with them at all for 50% of the market, the FTC's heads would explode. You know, it's just, it is intentionally to be coercive. It's half the market. And there are other cases, we cite them in our brief that say that when it's a total fund cutoff, that's coercive. And that is to say nothing of the kind of ethical and reputational consequences of just cutting everybody off and having everybody say, these manufacturers, these providers would rather make money than serve any of you people who have come to depend on their drugs. And that's to say nothing about the 11 to 23 month period where we can't get out. But if there are no further questions. Thank you very much. Miss potty. Good afternoon, your honors and may it please the court. Catherine potty for the United States. I'd like to start by picking up on the discussion of the codification of the provisions at issue here. That argument really just is a non-starter. The providers here are affected by the negotiation program only because of the reimbursement provisions that are codified in title 18 absent these provisions, there would be, uh, the providers would have no interaction, no, nothing at all to do with the negotiation program. And because the IRAs amendments to these provisions are one undoubtedly codified under title 18 and to form the entire basis for their connection to this just no grounds for making that argument. So as we explain on pages 25 and 26 of our brief, that argument fails even under plaintiff's own narrowed reading of what it means to arise under the Medicare act. There's, there's no connection to the negotiation program at all for these providers absent that, uh, those amendments, which themselves are codified in title 18. And you can see in the complaint, for example, that every time they bring up Nika or any of the providers, they discuss Medicare reimbursements. That is the connection upon which they rely. The title 18 amendments are the mechanism by which any of the negotiation program affects the providers. Uh, I also do want to, to, uh, to say that there would be a circuit split with this court were to go the other way. Judge Katz's in that opinion followed Supreme court precedent and recognizing that, uh, an action that arises, that seeks to recover on a claim arising under the Medicare act, like the reimbursements here can also arise under other statutes as well under the constitution as well. The Supreme court has said that. What do you say about your friend on the other side saying that in that case, Congress put it in a different, this is different because Congress put it in a different place here. The, uh, provisions at issue in community oncology, your honor, we're part of the balanced budget act. So completely separate from the Medicare statute here, whereas this program, the negotiation program, uh, has absolutely no significance whatsoever without the Medicare act. You can't even select drugs to negotiate without reference to their prices in the, in Medicare. You cannot, uh, none of the negotiated prices apply to any, any sales, uh, but for the benefit of Medicare beneficiaries. Uh, this is much more closely tied to the Medicare act and the balanced budget and requirements, especially because the key provisions that are necessary to affect the providers here are themselves indeed codified in title 18. So how exactly would you challenge this in a benefits determination proceeding when you're trying to say that you shouldn't be participating in this price setting process to begin with? How would that ever be cognizable in that proceeding? So I, I do want to make sure that we, uh, address those as two distinct issues. Uh, first there is a recognized process for challenging Medicare reimbursements and that is to present these to the agency. Right. But this is not a challenge for Medicare reimbursement. This is challenging to a novel unprecedented price setting program in an industry that the government is the 800 pound gorilla, the purchaser with the most monopsony power in the United States. Well, well, your honor, that, that point is not reconcilable with the Supreme Court's decision in Illinois council because the ultimate, I'm sorry, why is that not reconciled? One is a factual statement and one is a question about how you would you challenge it? I don't know that that point, it's not a point, it's a question. So is it, are you saying you could challenge it on that basis in the reimbursement proceeding or are you saying it doesn't matter that you can't challenge it too bad, so sad, there's just no remedy for you? Your honor, they are able to raise any constitutional claims that they would like in, uh, in the, when they present their claims to the agency and they have a right to have those adjudicated at that time. And do they have a right to have a jury to help them adjudicate their constitutional claims? Well, well, your honor, the, the administrative process, uh, sets up as my friend described a procedure for expedited review of constitutional claims. At that point, uh, they can come to district court. Uh, but I do. After they've been rejected or accepted or what is the, what is the, how long do they go through the other process before they can be, get, get the remedy? So I don't, I don't know exactly how long the process takes, but as my, as my friend did explain, it is expedited because of the agency, uh, can determine that when there are constitutional claims at issue under the scheme that Congress set up, then they can go to district court. And I do want to address these descriptions about the here and now injury, the procedural injury, uh, that, uh, the providers are asserting here. Um, and I think it would help to take a step back and consider this step by step. Uh, this comes up a lot in their standing analysis. They say that they have this procedural injury, uh, and I think we can all start with some common ground. We all agree that you cannot base a claim to standing on an abstract procedural violation. What you need is a vested procedural right tied to some concrete interest. Is this a second argument after your channeling argument? You have a standing argument. Is that what you're doing now? Uh, uh, yes, Your Honor. And I just, I, I bring that up with respect to their assertions of injury based on this here and now, and they, they invoke axon and all of that, Your Honor. And so I thought, uh, that was part of what you were asking about and I would like to respond to that. So that's an, you're, you're not trying to address standing. You're addressing that they're not actually injured in the here and now. And so that this reimbursement process was just fine and fine for them. Is that what you're saying? Uh, so, so the reimbursement process is indeed the mechanism by which they do need to bring these claims under the scheme that Congress set out in the statute. And I do want to explain why the nature of the injury here is not of a constitutional dimension. Um, and, uh, as, as we know, the procedural right, uh, that you need to assert a procedural injury has to come from somewhere. And here they are locating their procedural right in the due process clause of the constitution. And we also all know that to claim an injury based on the due process clause, the providers need to first allege that there is a constitutionally protected interest in liberty or property. And then of course, some government action threatening that interest and procedures inadequate to protect it. Uh, so the very first thing you need to even say that you are suffering a procedural injury under the constitution is a constitutionally protected interest in liberty or property. They have disclaimed the property interest here. They keep saying that, uh, the providers will have been injured even if they never lose a penny. That's not surprising. This circuit and several other courts of appeals have held that there is no constitutionally protected property interest in Medicare reimbursements. It also would make their claim subject to the channeling provision, which does not advance the ball for them. And so they do disclaim the property interest. What that leaves them with is a constitutionally protected liberty interest. This does seem to be what they're getting at. They, they do gesture towards this. They say that, uh, the providers are compelled to silence by the operation of the statute or, uh, or things of this nature, but they can't even really come out and say that what they're getting at as a constitutionally protected liberty interest, because it would honestly be absurd to contend that specialty infusion treatment centers have a liberty interest granted to them by the due process clause of the United States constitution to be in the room when the government makes decisions about Medicare. Uh, there's, there's no case like that. It would be like saying that a startup drone manufacturer has a constitutionally protected liberty interest in being in the room when the government makes defense procurement decisions. If they can't identify what constitutionally protected interest is at stake, then there is just nothing to their assertions of a here and now injury and injury that cannot be remedied. Even if they get paid money back, they have to, that the procedural injury they're pointing out, they find it. They say that they find it in the constitution and property and liberty are the only two places that you can find that. Uh, the constitution is not the APA. In a lot of cases, this is not the question that needs to be asked because you look to the APA, you find a notice and comment, right? And you say that that's the basis of your vested procedural right. And you identify a violation of that. But if you cannot say what constitutional interest is being violated here, then you don't have a procedural injury. You don't have a basis for standing. You don't have an injury that, that needs to be remedied right now. That is, that is, that is simply the nature of the procedural injury. They are asserting here. I'm, I'm happy to answer any questions about that. I, I'm also happy to discuss the economic, the nature of the economic injury and why that is also speculative. Uh, but as we do get going on that, I want to be clear from the start that any allegation of economic injury does concern their Medicare reimbursements. So if that's what this boils down to, then they're, they've already lost because under the channeling provisions under Medicare, uh, uh, claims that concern at bottom Medicare reimbursements must be channeled before there's jurisdiction to address them in district courts. What about the scenario where they would not participate and then have all the rest of their pro products banned, uh, from participating? Your honor. Is that not the statute? Does it not do this? Uh, no, no, your honor. Not with respect to the providers that these claims at issue are the ones that are brought by the Medicare providers. There is no need for any provider to participate in any negotiation process. These are not the drug manufacturers. The question we are looking at on appeal is the subject matter jurisdiction of the court to enter. Am I correct though, that the statute would make it so that if you chose not to have your product participate, then you could have no other product participate in Medicare. And wouldn't that be in any normal antitrust world? Um, well, if just using the monopsony power to, to have the tying would be, um, an antitrust violation, but this is beyond that. It's price setting using a regulatory arm on top of the monopsony power to tie other products. How would this at all be, um, lawful in any way? Um, and consistent with, you know, with any kind of, uh, understanding of competitive advantage to consumers. Yes, your honor. I do want to be absolutely clear that the Medicare providers have are, have no such interest. It's not the Medicare providers are not faced with any choice of that kind. These are, that, that is the, uh, the situation that the drug manufacturers are complaining about. But on appeal, we are looking only at the claims of the Medicare providers. So the whole question is whether we can get to the merits. And it is true that other cases brought by drug manufacturers have proceeded to the merits. But the question here has only to do with the Medicare providers claims and there's no subject matter jurisdiction over those claims. But even the providers have no interest in whether or not other drug manufacturers may or may not, uh, be able to include some of their program, excuse me, some of their drugs in Medicare without including others. Uh, so, so I do want to make sure that we clear that up. Um, but with respect to channeling here, I do also want to get at, uh, the argument that this just doesn't seem like a good fit for channeling. And I understand that to have been your honor's concern a little bit earlier today. And I do want to say that the Supreme Court recognized the appeal of some of these arguments in Illinois council on pages 12 and 13. Uh, but ultimately concluded that in this context, they had no force. The Supreme Court first explained that section 405 H goes well beyond an ordinary exhaustion requirement in the standard exhaustion or ripeness case. The court explained courts routinely consider whether there are, uh, doctrines, uh, that would call for early review, notwithstanding a standard ripeness or exhaustion problem. For example, they might, a court might determine whether a legal fit, a question is fit for resolution already or whether exhaustion would be futile. And those are features of the standard exhaustion case, but as a Supreme Court. It's very different than the standard. This is not a cleverly phrased way to complain about, um, people eligible for reimbursements are calculated. This is not any of those types of things. This is not a collateral constitutional statutory challenge. It is a straight down the middle, separate statutory constitutional challenge. And I do want to acknowledge that. And that is, I think also exactly what the Supreme Court was saying in Illinois council, that it's not a normal exhaustion situation because those considerations about whether a claim is fit for administrative resolution, just do not come into play and an Illinois council. And in this court's decision in physician hospitals, it is not possible to describe either of those situations and as involving cleverly disguised claims for benefits. I mean, in Illinois council, it was an association of nursing homes that needed Illinois council itself dealt with eligibility for reimbursement or calculation of once you got down to the rub of it, which this does not deal with at all. Your honor, Illinois council involved procedural challenges to regulations that uh, would indicate how would govern how the government would decide whether a nursing homes were, uh, up to standard. There were not claims by individual people seeking Medicare reimbursements and in physician hospitals, there was a physician owned hospital that wanted to expand and it could not proceed with the expansion because under the affordable care act, expanding, uh, expanding their hospital would mean that they were no longer at all eligible for any Medicare benefits, uh, benefits at reimbursements at all. So what they wanted to know was whether that provision was lawful such that they could proceed with their expansion of their hospital. That to your honor was not a cleverly disguised claim for benefits and in Illinois council, uh, in Illinois council's reasoning, it recognized the difference between these situations. It said, look, of course, channeling applies to the typical Medicare beneficiary claim, but it also applies in this situation that looks quite different from that. And, and that is, that is fundamental to the analysis here. The question is not how great of a fit is this between, uh, an administrative process? The question is, does the district court have jurisdiction under section 405 H? Uh, when the plaintiff's interest ultimately is vindicating their Medicare reimbursements, that's not the plaintiff's interest here. That's not the drug manufacturer's interest. Your honor. That's not pharma's interest. It is absolutely the provider's interests here. The providers have, if you look, if you look at the complaint and you look at any moment in the complaint where they reference providers, where they reference Nika, anything like that, they then talk immediately about Medicare reimbursements. It is not possible to disaggregate the provider's interest in Medicare reimbursements from their interest in the lawsuit. There's nothing in the complaint about that. Can you deal with the economic injury, please? Your time is running low. I absolutely your honor. Uh, and at this point in the litigation, we have every reason to believe that biotech will benefit from the negotiation program and not be injured by it. And that is assuming that negotiated prices ever even take effect for Stellara, which is itself highly speculative. Um, but, but even setting that aside, uh, I think it helps to look at a concrete example of why that is. So, uh, my friends say that, uh, in their brief point to a, a hypothetical drug whose average price, average sales price is $100 and Medicare would reimburse that at 6% more, so $106. And they say, if a provider buys the drug at the average sales price, you get, then get a $6 profit on that drug. Uh, and that assumes of course that the provider is buying it at the average sales price, but of course that's just an average. Any Medicare provider like biotech may well acquire the drug at something much greater than the average sales price. And if, if that's you as a small, uh, specialty infusion treatment center, then you are not making a $6 profit. You might not be even making a profit at all. And that's the existing state of affairs. If when the negotiation program goes into effect and the negotiated prices take effect, then the provider biotech would be guaranteed the right to buy and to acquire the drug at the negotiated price and then would be guaranteed a 6% profit. So as far as we know that that, that is the situation that affects biotech here. And I do want to emphasize that they never squarely alleged that biotech will deberate as a road at the bottom of the list, and that has opinions. They believe that if a particular client doesn't buy and acquire anything from the cannabis limited market, then I don't endanger their rights under those legislations.  What I want to say and I think I needed to echo this up earlier, is it makes the providers here. I mean, I'm asking from the perspective of the United States of America, which you stand here representing today. Do you believe that there's any constitutional or statutory limit upon the United States and its various agencies upon setting prices when the United States participates in a market where it has a large amount of market power as a as a buyer. Your Honor, I don't believe that there's any company that has the right to sell to the government a product that it produces at a price that the government does not wish to pay. That was the answer to the question. No, there is no constitutional or statutory limit upon the government setting of prices in in a market where it participates as a very large consumer with market power is the answer. No, there is no constitutional or statutory limit or is the answer there could be, but it's just not here. What is your answer to the question? Your Honor, there might be. It's not here. There's certainly no right to sell an item to the government at any price you wish that is protected by the Constitution, but this case in this appeal is not about the merits of that program. This is about the Medicare providers who are saying that they claim to be that they expect to be dissatisfied with their Medicare reimbursements in the proceedings below. The government asked Nika to show us a provider to show us how that provider would be injured. They returned with a declaration from biotech and from Nika CEO that declaration will not even squarely allege to be expecting any financial injury to do that. They would have to say something about the acquisition costs. They do. They do nothing of the sort and and that is telling your Honor and it tells us that there's no standing and that these if you were to prevail in this appeal was the district courts order correct regarding its dismissal of the remaining claims? Yes, your Honor. Why would that be appropriate to dismiss claims making venue determinations at that stage and in that way? It's a dismissal for without prejudice. Your Honor. It's a dismissal for improper venue. That is the standard remedy. Why would it be improper venue at that point? Your Honor. There's only one plaintiff upon which venue could be based in this action and that is Nika. If there's no subject matter jurisdiction over Nika's claims, Nika's not in the lawsuit. If there's no other plaintiff upon which to establish venue, venue is improper. Plaintiffs have not offered any other theories about why venue would nonetheless be proper. They did not do so in their district court briefing. I agree with you. They did not address this at all. I'm raising this. And I'm happy to address it. And 1391, your Honor, does provide for dismissal for improper venue and says that the court also may transfer in the interest of justice, but plaintiffs had not requested transfer. There's nothing unusual for about the court's dismissal for improper venue. Again, such a dismissal is without prejudice. A pharma rate may bring these claims in a proper venue. Thank you. Thank you. To begin with, my colleagues pointed out to me that I misspoke. I think we would like to have a decision from the district court by the end of the year. So if the court can act in time for that to happen, that would be our preference. Prices will be picked August 1st. Prices will be announced September 1st. So time marches on. To begin with, my friend, I think, was confused. She started talking about how we had to have a constitutionally protected interest. And I think that that's skipping ahead to the merits. You can look at Texas v. EEOC or Bertulli v. Continental Pilots Association. There's no discussion of people's constitutionally protected interest and their seniority rights as pilots. There's no discussion of Texas's constitutionally protected interest in being able to hire whom it chooses in the discussion. All you need is a concrete interest. We are the buyer. NICA is the buyer in these transactions. And it should have a say in how those rules are set. In addition, what is going on here is they're setting rules for the products that are bought and sold, you know, throughout this entire ecosystem. And clearly, you know, NICA, which is composed of people who buy the drugs and sell the drugs, have a concrete interest in that. In addition, the government argues that our only interest in this is Medicaid reimbursements. Again, no, it is not. The maximum fair price feeds into average sales price. Average sales price not only determines Medicare reimbursements, it determines private insurance reimbursements. As indicated in our declarations, I think this is our record on appeal 283, paragraph 123. There is a long-term contracts with private insurers use average sales price as a basis for reimbursement. So when maximum fair prices start driving down the average sales price, our reimbursements go down in the private sector as well. And that's to say nothing of these state laws that are being adopted that tie into the maximum fair price. So there's all sorts of economic interests and there's a separate procedural interest, at least as strong as Texas and the continental pilots in having a say in rules that may affect our world. Finally, I think this is going to be where I'll wind things up. The government has had a full opportunity to explain what the purpose of channeling would be here, what the purpose of administrative channeling is. It was very important to the court in Illinois Council because it served a real purpose there and helping the secretary to administer this program. The government still has not told us what earthly good it does for us to present our facial constitutional challenge to an administrative panel that will take whatever time it takes and then say we did not decide your question. Now you can go and sue again. The only purpose of this is to delay. They would prefer not to have this lawsuit and they're going to get rid of it any way that they can. But that is not a valid basis to hold that you should apply the channeling provision atextually to provisions that are entirely in subchapter 11. Again, you would not have to touch a hair on the head of any provision in subchapter 18. If there are no further questions. Thank you. We have your argument. We appreciate the arguments that you've given today, Mr. Elwood and Ms. Patti. The case is submitted. This concludes the cases.